#### IN THE

## SUPREME COURT

#### OF THE

## STATE OF LOUISIANA.

—◦✦◦—

### EASTERN DISTRICT, DECEMBER TERM.*

—◦✦◦—

*NOTT* vs. *DAUNOY & AL.*

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. The petitioner, owner of two undivided thirds of a tract of land, near the city of New Orleans, demands that a cant or licitation of it may be ordered, alleging, that from its shape, the situation of the buildings and improvements, a servitude with which it is burdened, and other circumstances, an a tual di-

A report of experts ought not to be rejected, because the experts *swore* after it *was* reduced to writing.

Nor because the oath was administered by a justice of the peace.

Although there is but one tract to be divided, the experts

---

* Continued from the preceding volume.

NOTT
*vs.*
DAUNOY & AL.

*ought to make
an inventory &
appraisement
of the several
buildings on it.*

vision of it cannot take place, without manifest inconvenience and loss.

The defendants, co-proprietors of the other undivided third, resist the demand, on the ground, that no loss or inconvenience will attend an actual division, and that a cant, or licitation, in the present dearth of the circulating medium, can be advantageous to no one but a purchaser

The licitation was decreed, and the defendants appealed.

We find, by a perusal of the record, that on the application of the petitioner, experts were appointed, " to make an inventory of the property held in common by the parties, and to determine on a view of it, whether it can be conveniently divided ?" That two of the three experts appointed, reported, that " it is impossible to divide the tract, in a manner suitable to the interest of the parties; because, a division would deprive it from a third of its value, by preventing its future improvement, as a suburb—a circumstance which must soon or late happen ; and the anticipation of which constitutes a part of its present value."

The other expert declares, that " the tract may be divided, without injury to the owners :

that experience has shewn, that lands near the city, that may be improved as a suburb, have acquired an increase of value, by being divided into small parcels—that the improvement of the tract as a suburb, is now problematical; as it would require great sacrifices to overcome the obstacle presented by its separation from the suburb Marigny, by the rope-walk and a strip of land three feet in width, reserved by the proprietor of that suburb, to prevent any connexion with it."

The first objection, is that of the defendants' counsel, in regard to the oath of the experts.

He insists, it was taken untimely—not administered by the proper officer,—and was not taken by one of the experts.

1. The report was sworn to *after* it was reduced to writing.

Regularly, an oath should precede the execution of the trust. Thus the party acts under the impression of the awe which an appeal to the Deity excites. In practice, however, this is seldom attended to, in case of *written* depositions, or affidavits; especially where the witness is not called upon to answer interrogatories. He draws up, or dictates, his deposition; he afterwards reads it, or hears it read;

East'n District.
Dec. 1823.

NOTT
vs.
DAUNOY & AL.

he makes, or directs, alterations, if needed; and, when satisfied that his meaning correctly appears, he swears that what is written is true. This is the universal practice, in cases in which a party is to satisfy a court or judge of the existence of a fact, by his own oath.

In the present case, the experts undertook only to express their opinion of the possibility of dividing the land without injury to the parties. No previous act, no inventory, no appraisement, was to precede it. They reduced their ideas to writing; made oath that their opinion was truly expressed; and brought the paper into court. Their oath preceded the conveyance of their intentions to the court, and this suffices. We do not think that the district court ought to have rejected the report. on the ground, that the experts did not swear till after the report was prepared.

2. The oath was administered by a justice of the peace of the parish. Strictly, papers sworn to for their introduction into court, ought to be sworn to in open court, or before one of its members. But practice, sanctioned in many instances by legislative provisions, allows the swearing before a justice of the peace. As the law has not appointed any officer to receive the

process verbal of experts in the district court, we conclude the objection was rightly over-ruled.

East'n District.
*Dec.* 1923.

NOTT
*vs.*
DAUNOY & AL.

3. The court had appointed *three* experts to act, without vesting any power in the majority of them. It is true, the conclusion of this majority was the conclusion of the experts. But though they could not *all* be required to *agree*, all were required to *act*—and he who did not swear, did not *legally* act. One of the petitioner's counsel has correctly likened the experts to arbitrators, in this respect.

The next objection is, to the *sufficiency* of the report.

The experts were expressly prayed for, by the petitioner's counsel, and appointed by the court, " to make an inventory," and to report their opinion ; and it is urged the law required them to make an *appraisement.*

It is contended, that as the parties held only one tract of land in common, no *inventory* was needed ; neither was any appraisement—as the experts recommended no partition, but a sale.

The statute requires the experts to set forth the *things*, and their value, and whether the *appraised* object can be conveniently divided.

East'n District.
Dec. 1823.

NOTT
vs.
DAUNOY & AL. Here they do not set forth, whether an ap-
praised object can be divided or not; but swear
an *unappraised* object cannot be conveniently
divided

One of the petitioner's counsel admits, that
the opinion of the experts is not absolutely
conclusive; but that the judge may, and we
think ought to, examine it carefully, weigh
their reasons, and that the judgment to be
pronounced is not necessarily conformable to
it.

In the present case there is but one tract of
land it is true, but this tract has a superficies of
upwards of one hundred and twenty arpents,
and from ten to twelve buildings are erected on
it.    Now, correct information, under the oath
of the experts, of the value of the land inde-
pendently of the buildings ; of the number, na-
ture, and value of these buildings respectively,
would have been of considerable importance,
in pronouncing on one of the allegations in the
petition—" that the situation of the buildings
and improvements were an obstacle to a divi-
sion "   Had the value of such buildings, the
nature and contiguousness of which rendered
a separation detrimental, been shewn much to
exceed, independently of the soil they cover,

the value of the share of the largest proprietor, this circumstance would considerably weigh in favor of a licitation. But if the buildings were of a very inconsiderable value with regard to the land, and were scattered over it, so that many of them could conveniently be separated from the rest, a different conclusion might well be the result.

East'n. District<br>Dec. 1823.<br><br>NOTT<br>vs.<br>DAUNOY & AL.

To lay before the court correct information with regard to the nature and value of these buildings appears to us to have been the object of the petitioner's counsel, when he prayed that the experts might make an *inventory ;* and we think it would have been the duty of the court to require it, even if it had not been asked.

Neither does it appear to us an appraisement of the land and buildings severally could be dispensed with.

There is not in the record any evidence in support of any of the specific grounds on which the licitation is asked.

Admitting, as is most likely, the case, that there is a near prospect of the improvement of the tract as a suburb, the conclusion of the two experts, that this improvement will be delayed, checked, or prevented, by a partition, is not very obvious. The tract is large enough to be

divided into several squares; and nothing induces a belief or fear, that the party who may become sole proprietor of the part nearest to the city, will deprive himself of the benefit resulting from improving his property in this manner, for the purpose of doing injury to his former co-proprietor. We mean not, however, to express any opinion on this point, as it is not necessary to the determination of the case.

It is lastly said, by the petitioner's counsel, that he is owner of two thirds, and if the land may conveniently be divided into two pieces, one of which will be double the value of the other, (yet as a division into three parts of equal value cannot be conveniently made, at least an inconvenience will result, if chance happens to place the share of his co-proprietors betwixt his,) a licitation must necessarily take place.

This appears to us begging the question. It is not shewn, that a division into three equal parts cannot be made; and as chance must determine the owner of each, the petitioner must submit if the fickle divinity places his two shares aloof from each other.

It seems the counsel did not absolutely rely on this objection. or at least, that he did not at

first consider it as conclusive ; as it would then have been useless to recur to any experts ; and the question might have been very much simplified, if a licitation had been claimed on the ground of the shares of the parties being unequal.

It is therefore ordered, adjudged, and decreed, that the decree of the district court be annulled, avoided, and reversed; the process verbal, or report, of the experts, set aside, and the case remanded; with directions to the judge to proceed therein, as if the experts had not made any report. The costs of the appeal to be borne by the petitioner and appellee.

*Livingston* for the plaintiff, *Derbigny* for the defendant.